UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MARLON DEAN MILAM,           )
                             )
            Petitioner,      )
                             )
      v.                     )      No. 4:08 CV 1066 HEA
                             )
TROY STEELE,                 )
                             )
            Respondent.      )

**OPINION, MEMORANDUM AND ORDER**

This action is before the court upon the amended petition of Missouri state prisoner Marlon Dean Milam for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the amended petition is dismissed.

**I.  BACKGROUND**

After a jury trial in the Circuit Court of Dunklin County, Missouri, petitioner Milam was convicted of two counts of tampering with a witness.[1] (Doc. 15, Ex. C at 34, 35.)  He was sentenced to consecutive terms of seven years imprisonment.  (Id., Ex. C at 40, 41, 44.)  The Missouri Court of Appeals affirmed the convictions.  (Id.)

---

[1] Milam was charged in two informations.  An information filed in Case No. 02 CR 762793 charged two counts of sodomy.  An information in Case No. 02 CR 764720 charged two counts of witness tampering.  These informations were consolidated for a joint trial.  Milam was acquitted of both sodomy charges.  (Doc. 15, Ex. C at 32, 33.)

The circuit court denied Milam's motion for post-conviction relief under Missouri Supreme Court Rule 29.15. (Id., Ex. H at 35.) The Missouri Court of Appeals affirmed the circuit court's denial of relief. (Id., Ex. L); Milam v. State of Missouri, 262 S.W.3d 262 (Mo. Ct. App. 2008) (summary order). Thereafter, Milam began this federal habeas case.

The Missouri Court of Appeals described the evidence that supported the convictions as follows:

> C.G. and his brother, J.D.G., were 12 and 15 years old, respectively, on March 29, 2004, the date of [petitioner]'s trial. They previously did yard work at the home of [petitioner]'s mother. [Petitioner] lived with his mother. C.G. and J.D.G. would also play video games there. They had played video games at [petitioner]'s home the evening of May 25, 2002.
>
> On May 28, 2002, a police officer and a Division of Family Services worker talked to C.G. as part of their investigation of a child abuse hot-line call. C.G. did not relate any incident of abuse; however, they talked to him again on May 30, 2002. On May 30, C.G. told investigators he had been at [petitioner]'s house "around the 25th of May." C.G. told the investigators that [petitioner] took him to a bedroom and shut and locked the door; the [petitioner] pulled C.G.'s pants down and pulled his own pants down. The police officer stated, "[[Petitioner]] supposedly stuck his penis up [C.G.'s] rectum. And after that, [C.G.] and them left and went back home."
>
> C.G. underwent a physical examination. The examination revealed that C.G. had three lacerations around his anal area estimated to be five to ten days old. The lacerations were consistent with blunt force trauma that was consistent with penile penetration.

On October 30, 2002, and on October 31, 2002, [petitioner] called Pamela Jo Swanner, a long-time friend of his and his mother. Ms. Swanner was also a long time friend of the parents of C.G. and J.D.G. Ms. Swanner testified about her conversation with [petitioner]. She explained the "circumstance[s]" of that conversation:

> [[petitioner]] called and he was very upset and he was talking about killing hisself [sic]. And I asked him did he know where his momma was and he said no, he didn't know where she was. And then I asked him -- he started -- I talked him down from that and he told me to call [C.G.'s and J.D.G.'s father] and get him to go up -- he had 24 hours to go up to the thing and have his story and all that they told to be reburked (sic), you know, turn the thing and if it didn't get done, well, then he was going over there and shoot and kill them all –- [.]

Ms. Swanner was asked, "And who did you report this phone call to?" She said she called a Division of Family Service worker and that the Family Services worker called the Kennett Police Department. She later called the children's father and told him to keep his children close to home.

(Id., Ex. E at 2-3.)

## II. PETITIONER'S GROUNDS FOR HABEAS RELIEF

Petitioner alleges six grounds for federal habeas corpus relief:

(1)   His trial counsel rendered constitutionally ineffective assistance of counsel when he failed to call witnesses and offer evidence on his behalf.[2]

---

[2]Although not specifically mentioned, the witnesses appear to be Lois Kirklin and Jewell Milam. Petitioner's appeal from post-conviction relief focuses on the expected testimony of these two witnesses who apparently would account for his whereabouts on October 29 through 30 and November 2 through 5, 2002. (Doc. 15, Ex. F at 14-15.)

- 3 -

    (2)    His trial counsel rendered constitutionally ineffective assistance of counsel when he failed to call witnesses and offer into evidence motel receipts[3], pictures, and a police report of scanner calls[4] on his behalf.

    (3)    His trial counsel rendered constitutionally ineffective assistance of counsel when he failed to call a witness on his behalf and failed to impeach a State's witness.

    (4)    His trial counsel rendered constitutionally ineffective assistance of counsel when he failed to call a witness on his behalf.[5]

    (5)    "They" kept changing the date on the charge.[6]

    (6)    He was unable to obtain a police report for five years.[7]

Respondent contends that petitioner's grounds for habeas relief are procedurally barred where they differ from the points raised during the appeal of the denial of post-conviction relief. (Doc. 14 at 4.) Respondent further argues that all grounds for relief lack merit. (Id. at 5.)

### III. PROCEDURAL BAR

---

[3] Although not stated, the receipts would apparently show Milam was in Georgia on November 3 and 4, 2002. (Id., Ex. L at 4.)

[4] Ms. Swanner testified at trial that James Roper told her he heard over a police scanner that Milam was near the Gage home with a gun on November 3, 2002. (Id., Ex. D at 134-35.)

[5] Milam invokes the Constitution of Missouri to support this ground for relief.

[6] The information in Case No. 02 CR 764720 charged Milam with two counts of witness tampering on or about October 31, 2002. (Id., Ex. C at 9.) Jury Instructions 9 and 10 refer to on or about October 30, 2002. (Id., Ex. C at 28-29.) Ms. Swanner indicated that she was confused about whether she talked to Milam on October 30 or 31. (Id., Ex. D at 139-40.)

[7] After reviewing the state court record, this court concludes that this ground for relief has not been raised in the Missouri state courts.

A habeas petitioner seeking federal review of his grounds must first raise them at each step of the state court proceedings. See 28 U.S.C. § 2254(b)(1)(A); Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994). "The failure to preserve a claim on appeal of a state court ruling raises a procedural bar to pursuing that claim in federal court." Boyd v. Groose, 4 F.3d 669, 671 (8th Cir. 1993). A state prisoner has not exhausted his remedies, "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). No such procedure remains available to petitioner Milam.

In exhausting his state law remedies, a petitioner must have fairly presented to the state courts the substance of his federal habeas corpus ground. Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam). Simply because all the facts were available to the state court is not enough. Id. "[A] habeas petitioner must have raised both the factual and legal bases for each ineffectiveness of counsel claim in the state courts in order to preserve the claim for federal [habeas corpus] review." King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc) (citation omitted). When the state courts, trial and appellate, have not had the opportunity to review either the factual or the legal grounds raised in a habeas petition, the grounds are barred from review by the federal courts. Id.; Jones v. Jerrison, 20 F.3d 849, 855 (8th Cir. 1994).

<u>State court rulings</u>

Direct appeal from convictions

On direct appeal from his convictions, Milam presented only one point to the Missouri Court of Appeals. (Doc. 15, Ex. A at 10.) He argued,

> [t]he trial court erred in overruling [his] motion for judgment of acquittal as to [the tampering with a witness charges], because the evidence was insufficient to establish beyond a reasonable doubt that [he] was guilty . . . [because] the evidence failed to establish that [he] had the purpose to influence J.D. or Charlie to withhold evidence with his threats since the threats at issue were neither made in J.D.'s or Charlie's presence nor can it be assumed that the threats were intended to be conveyed to them. The earlier threats to kill Charlie if he told were not made in connection with the official proceeding and were not the corpus of the charged offense, which was instructed to have occurred on October 30, 2002.

(Id.)

The Missouri Court of Appeals restated its understanding of petitioner's sole point on appeal:

> [Petitioner] argues that the threats that form the bases for the charges were directed to the forcible element of the offense of sodomy, an offense of which [petitioner] was found not guilty. [Petitioner] argues the evidence was not sufficient to prove the statements made to Ms. Swanner were intended to influence witnesses to withhold evidence from a judicial proceeding; that the evidence did not disclose intent for the evidence to be conveyed to potential witnesses.

(Id., Ex. E at 3.) The appellate court affirmed the convictions, holding that an prosecutable threat to a witness need not be made directly to the witness, but could be stated with the expectation that they would be conveyed to the person threatened. (Id. at 4.)

This ground is not alleged in this federal habeas proceeding and its merits are not considered by this court.

### Direct appeal from denial of post-conviction relief

On appeal from the circuit court's denial of collateral post-conviction relief, petitioner raised two points and the Missouri Court of Appeals dealt with them as follows:

(1)

The first is that his trial counsel failed to call Mr. Lois Kirklin as a witness and failed to present evidence of petitioner's whereabouts on October 29 and 30, which evidence would have "provided vital impeachment evidence of the state's principal witnesses." (Id., Ex. F at 14.)

The Missouri Court of Appeals in its supplemental opinion ruled this point as follows:

> The acts that were charged as tampering with witnesses were alleged to have occurred on or about October 31, 2002. Evidence at trial was that [petitioner] had called Pamela Jo Swanner, a long-time friend of [petitioner], and threatened witnesses who would testify at his trial. [Petitioner] called her on October 30, 2002, and on October 31, 2002. Ms. Swanner testified at the [petitioner's] trial regarding the "circumstance[s]" of her conversations with [petitioner]. . . . Ms. Swanner reported the conversation to Division of Family Services (DFS) personnel. A DFS worker notified the police department of the threats. Ms. Swanner later called the victims' father and told him to keep his children close to home.
>
> [Petitioner] now contends that his employer, Mr. Lois Kirklin, had he been called at trial, would have testified that [petitioner] was working on October 29 and 30, 2002; that he would have provided a written account of [petitioner's] hours. He argues that this would have impeached Ms. Swanner's testimony and provided a defense for the charged offenses.

> The [circuit] court made the following finding with respect to Mr. Kirklin.
>
>> As part of their trial strategy, [petitioner's] attorneys chose not to call Mr. Kirklin to testify as there was no basis for calling him. They thought his testimony would not provide a viable defense. After hearing Mr. Kirklin's testimony, [the circuit court] finds that his testimony would not have aided the defense of the case, nor would it have changed the outcome of the trial. [Petitioner] did not prove that the failure to call Mr. Kirklin as a witness constituted ineffective assistance of counsel.
>
>> The [circuit] court's findings with respect to trial counsel's failure to call Mr. Kirklin are not clearly erroneous. Ms. Swanner's testimony was that she spoke to [petitioner] on October 30 about 6:30 p.m. Trial counsel told the [circuit] court that Ms. Swanner never wavered with respect to the time when she had telephone conversations with [petitioner]; that she never contended the telephone calls occurred prior to 6:00 p.m. Mr. Kirklin's testimony would have been that [petitioner] worked until 6:00 p.m. on October 29 and 30. The hours that [petitioner] worked would not have prevented him from making the telephone call to Ms. Swanner at the time she stated. Point I is denied.

(Id., Ex. L at 2-4.)

(2)

The second and final point raised on this appeal was that petitioner's trial counsel failed to call Jewell Milam as a witness and failed to present evidence of petitioner's whereabouts on November 2 through 5, which would have "provided vital impeachment evidence of the state's principal witnesses." (Id., Ex. F at 15.)

The Missouri Court of Appeals denied relief on this ground:

> The [circuit] court made the following finding with respect to trial counsel's failure to call Jewel Milam, [petitioner's] mother, at trial.

> [Petitioner] claims that trial counsel were ineffective for failing to introduce evidence demonstrating that [petitioner] was not in Missouri, but in Arkansas and Georgia, from November 2 until November 5, 2002. He contends that counsel should have called his mother to testify to his absence from Missouri, and that they should have attempted to introduce a receipt from a motel in Georgia for the nights of November 3 and November 4, 2002. . . . He asserts that this evidence would have impeached the testimony of Pamela Swanner and Charlie Gage.

Jewel Milam testified at the evidentiary hearing in this case. She testified that [petitioner] went with her to Georgia during the period November 2-5, 2002. The [circuit] court found the following with respect to that testimony.

> [Petitioner's] mother had accompanied her son on the many trips to confer with [his] attorneys, but neither attorney could recall her stating that she and movant were out of town at the critical times. The attorneys thought her testimony as to the absence from Kennett, and the trip to Georgia, would not provide a viable defense. This was a reasonable choice of trial strategy, and [the circuit court] does not believe that her testimony at the evidentiary hearing, had it been given at the trial, would have aided the defense or changed the outcome of the trial.

> [Petitioner's] trial counsel testified at the evidentiary hearing that evidence of [petitioner's] whereabouts on November 2 through 5, 2002, was not offered at trial because the dates were outside the time frame of the incidents alleged in the information and Ms. Swanner's testimony. The [circuit] court found that the testimony that Ms. Milan could have provided regarding [petitioner's] whereabouts on November 2-5, 2002, would not have provided a viable defense to the crimes charged. Those findings are not clearly erroneous.

(Id., Ex. L at 4-5.)

## State's response to petitioner's grounds

Respondent argues that petitioner Milam's grounds for habeas corpus relief are not entirely clear and that the appears to be raising the grounds he raised in his appeal from the denial of post-conviction relief.  The court largely agrees with respondent on both points.  Respondent argues that to the extent the federal grounds differ from those raised before the state courts they are procedurally barred.  Respondent argues also that the grounds are without merit.

### Overcoming procedural bar

To overcome a procedural default, which would otherwise bar seeking habeas relief in this court, a habeas petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

To establish actual prejudice, petitioner must show that the errors alleged in his grounds for relief disadvantaged him actually and substantially, "infecting his entire trial with error of constitutional dimensions." Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999)(citation omitted).

To demonstrate that the failure to review his grounds for federal habeas relief would result in a fundamental miscarriage of justice, petitioner may show that he is actually innocent. Murray v. Carrier, 477 U.S. 478, 495-96 (1986).  A habeas

petitioner asserting actual innocence must do so with new, reliable evidence. Schlup v. Delo, 513 U.S. 298, 324 (1995). Without new evidence of innocence, even a meritorious constitutional claim is not sufficient to permit an habeas court to reach the merits of a procedurally defaulted claim. Id. at 316.

Milam has presented no factor, external to his defense that has impeded his efforts to comply with Missouri procedural requirements, which would allow him to be sheltered by Coleman and overcome this procedural bar. Coleman, 501 U.S. at 750-52. Likewise, Milam does not present new, reliable evidence allowing him to otherwise circumvent this bar. See Schlup, 513 U.S. at 324.

However, a federal habeas ground may be ruled on its merits, if it is found to be without merit, even though it is untimely and barred. 28 U.S.C. § 2254(b)(2); Keith v. Weber, No. 05-4175, 2006 WL 1367363, at *4 (D.S.D. May 15, 2006) (addressing and denying a habeas petition on the merits even though the habeas petition was untimely).

## IV.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted by a federal court on a ground that has been decided on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is contrary to clearly established law, if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000)(plurality opinion). A state court's decision involves an "unreasonable application" of clearly established federal law, if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. An incorrect ruling is not necessarily unreasonable, and the writ will not be granted unless a state court decision is both wrong and unreasonable. McGehee v. Norris, 588 F.3d 1185, 1193 (8th Cir. 2009).

A state court's factual findings are presumptively correct and are subject to disturbance only if proven incorrect by clear and convincing evidence. 28 U.S.C. §

2254(e)(1); Bell v. Norris, 586 F.3d 624, 630 (8th Cir. 2009), cert. denied, 130 S. Ct. 1295 (Jan. 25, 2010).

The standard for habeas review articulated by AEDPA applies only to those grounds which were adjudicated on the merits by a state court. See Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002). Where a petitioner's grounds were not adjudicated on the merits by a state court, the pre-AEDPA standard for habeas review governs. Id. Under the pre-AEDPA standard, the habeas petitioner must show a "reasonable probability that the error complained of affected the outcome of the trial or that the verdict likely would have been different absent the now-challenged [defect]." Id. at 866 (internal citations omitted).

In conducting a federal habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Estelle v. McGuire, 502 U.S. 62, 68 (1991). Violations of state law alone provide no grounds for federal habeas relief. Id.; Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994).

## IV. DISCUSSION

**GROUNDS 1, 2, and 3: Ineffective Assistance of Counsel**

In Ground 1, Milam claims his trial counsel failed to call witnesses and offer evidence on his behalf. In Ground 2, Milam claims his trial counsel failed to

investigate and call witnesses. In Ground 3 Milam claims his trial counsel failed to obtain witnesses, failed to offer evidence, and failed to impeach a state's witness when that witness said he lied or the prosecutor told him to lie.

The right to effective assistance of counsel is rooted in the Sixth and Fourteenth Amendments. See generally Strickland v. Washington, 466 U.S. 668 (1984); Gideon v. Wainwright, 372 U.S. 335 (1963). The benchmark for judging these grounds "must be whether counsel's conduct so underminded the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. In doing so, an habeas petitioner must prove two elements, performance and prejudice.

First, a petitioner must demonstrate that counsel's performance was deficient. Id. at 687. This requires showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." Id. There is a strong presumption that counsel rendered effective assistance. Id. at 689-90. The Court provides counsel with a wide latitude in decision making, which should not be viewed through the distorting lens of hindsight. Id. Strategic choices made through a reasonable investigation of law and facts "are virtually unchallengeable." Id. at 690. Even with decisions not to

investigate, "a heavy measure of deference" is given to counsel's judgment. Id. at 691.

An error in counsel's performance does not warrant setting aside the judgment, if the error had no effect on that judgment. Id. The second element of the Strickland test requires petitioner to demonstrate the deficient performance prejudiced the defense. Id. at 687. This requires a showing that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.; Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). Petitioner must show that counsel's performance actually had an adverse effect on the defense. Strickland, 466 U.S. at 693-94. Petitioner must further show there is a reasonable probability that, but for counsel's performance errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." Id. at 694; Pfau v. Ault, 409 F.3d 933, 939-40 (8th Cir. 2005) (petitioner must show there is a reasonable probability, but for counsel's errors, he would have prevailed).

**A. Mr. Lois Kirklin's Testimony**

Milam asserted on his appeal from the denial of his post-conviction relief motion that his employer, Mr. Lois Kirklin, would have testified that Milam was working on October 29 and 30, 2002. (Doc. 15, Ex. L at 3.) Milam contended that

this testimony would have impeached Ms. Swanner's testimony and provided a defense for the charge of tampering with a witness. (Id.) His argument, however, fails to meet either the performance or prejudice prong of the Strickland test. As set forth above, the Missouri circuit court and appellate court considered Mr. Kirklin's testimony and determined that trial counsel's decision not to call Kirklin was not ineffective assistance of counsel. The record does not overcome the strong presumption that his trial attorney rendered constitutionally adequate assistance of counsel in this regard.

Milam also has failed to establish that he was prejudiced by his counsel's actions. Mr. Kirklin would have testified that Milam worked on October 29 and 30, 2002, until 6:00 p.m. (Id., Ex. L at 3.) Ms. Swanner never wavered on the fact that Milam called her at about 6:30 p.m. (Id.) There is no reasonable probability that but for this error the result of Milam's trial would have been different. Being at work until 6:00 p.m. would not have prevented Milam from calling Ms. Swanner, a half an hour later.

The Missouri courts' rulings against petitioner on this ground were reasonable.

**B.  Jewel Milam's Testimony; Police Scanner Calls; Motel Receipts**

Jewel Milam would have testified at trial with regard to Milam's whereabouts from November 2 through 5. (Id., Ex. L at 4.) Milam contends this testimony would

- 16 -

have provided "vital impeachment evidence of the state's principal witness," because it would show Milam was not in Missouri between November 2 and 5, 2002. (Id.) Milam alleges his trial counsel should have further introduced motel receipts to prove he was in Georgia on November 3 and 4 of 2002. (Id.) As stated above, the circuit court considered Ms. Milam's testimony and concluded that petitioner's trial counsel made a reasonable trial strategy decision that her testimony would not have aided petitioner or changed the outcome of the trial.

This court agrees. These dates Ms. Milam would have testified to were outside the time frame of the incidents alleged in the information and the testimony provided by Ms. Swanner. Because her testimony related to a time period other than the one charged against Milam, counsel's strategic choice was reasonable.

Furthermore, it cannot be said that counsel's decision deprived petitioner Milam of a fair trial. Even with the testimony of Ms. Milam, the result of the trial very likely would have been the same. Strickland, 466 U.S. at 693-94.

Ms. Swanner also testified at trial that she heard from James Roper that a police scanner reported that Milam was seen near the Gage home with a gun.[8] (Doc. 15, Ex. F at 24.) This apparently took place on November 3, 2002. (Id.) Although Milam

---

[8] Milam may have been referring to this "police report of scanner calls" in his Ground 6 claim for relief.

- 17 -

may have been out of town during this incident, it does not negate the finding that threats were made on or about October 30. Ms. Milam would not have testified to petitioner's whereabouts on those dates. (Id., Ex. L at 4.)

Milam has not shown that but for his trial counsel's actions he would have prevailed at trial had counsel called either Mr. Kirklan or Ms. Milam.

Accordingly, as to Grounds 1, 2, and 3, the state courts' decisions were neither contrary to clearly established law, nor were they based on unreasonable determinations of the facts.

**GROUND 4: Ineffective assistance of counsel**

In Ground 4, Milam asserts his rights conferred by the Missouri Constitution Article I, Section 18(a). (Doc. 12 at 10.) In support of this ground, Milam alleges his trial counsel rendered ineffective assistance of counsel. (Id.)

In conducting a federal habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States, not the law of Missouri. Estelle, 502 U.S. at 68. Violations of state law provide no grounds for federal habeas relief and are thus are not cognizable in federal habeas actions. Id.; Poe, 39 F.3d at 207.

This ground is dismissed.

**GROUNDS 5 and 6: Date of offense and failure to disclose police report**

In Grounds 5 and 6, Milam asserts "they" kept changing the date on the charge, and he did not receive a police report from 2003-2008. (Doc. 12 at 5.) In his Rule 29.15 state court post-conviction relief motion, Milam claimed his Fifth Amendment rights were violated. (Doc. 15, Ex. H at 19.) However, Milam failed to raise this ground on appeal. (Id., Ex. F at 14-15.) "In Missouri, a claim presented in a Rule 29.15 motion but not advanced on appeal is considered abandoned." Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996); see also Jolly, 28 F.3d at 53 ("Failure to raise a claim on appeal from the denial of post-conviction motion erects a procedural bar to federal habeas review.")

Milam has presented no evidence that a factor external to his defense impeded his efforts to comply with Missouri procedural requirements, as required by Coleman to overcome the procedural bar. (Doc. 12 at 1-15.) Additionally, Milam's vague assertions that "they keep changing the date" and the length of time it took Milam to obtain a police report are not the new, reliable evidence the Supreme Court in Schlup requires. Therefore, Milam has not demonstrated legally sufficient cause for his default of the Missouri state court procedures nor a fundamental miscarriage of justice. Accordingly, Grounds 5 and 6 are procedurally barred.

These grounds also fail on their merits. Defendants are afforded the right to a fair trial by the Due Process Clause of the Fifth Amendment and by the comparable Clause in the Fourteenth Amendment. United States v. Agurs, 427 U.S. 97, 107 (1976). Milam was charged with tampering with a witness on or about October 31, 2002. (Doc. 15, Ex. C at 9.) The jury instructions in his case hypothesized October 30, 2002, as the date on or about which Milam tampered with a witness. (Id., Ex. C at 28-29.) Milam had a full opportunity to cross-examine Ms. Swanner about the discrepancies in her recollection of dates. In fact, Ms. Swanner admitted that the dates were a little confusing. (Id., Ex. D at 140.) The discrepancy in the dates did not prevent Milam from being afforded a fair trial.

Furthermore, the voluminous record does not indicate that Milam was not able to obtain a police report as he so claims. Considering Agurs, Milam was afforded a fair trial.

## VI. CONCLUSION

For the reasons discussed above, the petition of Marlon Dean Milam for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied. An appropriate Judgment Order is issued herewith.

Dated this 9th day of September, 2011.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE